(173 App. Div. 717)

SILBERBERG et al. v. WEMBER et al.

(Supreme Court, Appellate Division, Second Department.    June 29, 1916.)

FRAUDULENT CONVEYANCES ⚙105—HUSBAND AND WIFE.

    Where, after an insolvent firm of embroidery makers lost their machines by foreclosure, their wives bought the machines and again started the business, their husbands working for them, the insolvent firm's creditors could not complain; the property having been completely lost to the firm or its creditors.

    [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 345; Dec. Dig. ⚙105.]

    Carr, J., dissenting.

Appeal from Special Term, Kings County.

Action by Isidor Silberberg and another against Sam Wember and

others. From a judgment of Special Term for plaintiffs, defendants appeal. Reversed, and complaint dismissed.

Argued before JENKS, P. J., and THOMAS, CARR, MILLS, and RICH, JJ.

Louis B. Williams, of New York City, for appellants.

Albert M. Levy, of New York City, for respondents.

THOMAS, J. The facts are free from any concealment, and have been. Three men were in partnership under the name of the Favorite Embroidery Company. They were Seidenstock, Wember, and Kwestel. Seidenstock went out early in 1913. Then the shop was closed, as the remaining partners could not do business. They were owing some $1,200, including the judgment of the plaintiffs. They had no assets, save some machinery, and that was mortgaged, and the security held or acquired by Diamond. In that situation Diamond foreclosed and bought in the machines. Then the men had nothing except their hands, skilled to the business. Diamond would not sell the machines to them, because they owed money. They had no interests, no equity. But Diamond finally, importuned doubtlessly by the men and wives, consented to sell to the wives, which he did. He received their notes for the purchase price and took back a mortgage. The wives filed a certificate that they were doing business under the name of the Parisian Swiss Embroidery, and, after the place had been closed for some months, the wives started anew. The men worked in the shop, and each drew $10 per week, and the wives severally drew the same. The men substantially conducted the business, apparently and actually, for the wives. Now the plaintiffs claim to find in that history a plan to place the property beyond the men's creditors.

Diamond's foreclosure is not assailed. When he bid in the machines the men had nothing, in them or otherwise. His creditors had no ability to follow the machines for their debts. How, then, could the wives cheat the creditors by buying of Diamond? Suppose the wives had not bought at all; what could the creditors have got of which they are now deprived? Diamond had a complete right to buy, and the women to buy. The husbands were bankrupt in their petty business, and actually disqualified by poverty and debts from getting credit. Why should not the wives go into business, and why should not the husbands aid them by their services? But it is said that the wives bought and went into business as the agents of the men. Diamond would not sell to the men. So they could not be principals. They had nothing to pay, and Diamond would not take their notes. So they could not be principals. Diamond took the wives' notes. They alone are liable on them, not the men. The wives publicly and legally opened the business, and are alone liable for its debts. No resort can be had to the men. What reason, then, for the finding that the women were mere agents of the husbands? The supposed answer is, because the men conduct the business and with others do the work. But the law does not forbid that. It is a common and legal practice that one, unable by his pecuniary condition to do business, should, as the agent of his wife or some other, do the work of operation. The vice of

the thing is when the husband's property is covered up by such a scheme. Here the men had nothing, and if the wives had not bought there would have been no sale—no business. The men's future services did not belong to their creditors, and they could place them at the disposition of the wives.

The judgment should be reversed, and the complaint dismissed, with costs. All concur, except CARR, J., who dissents.