ROWE v. DROHEN et ux.

(District Court, W. D. New York.   September 24, 1917.)

No. 189–B.

HUSBAND AND WIFE ⬤⇒149(4)—SEPARATE PROPERTY OF WIFE—RIGHTS OF HUSBAND'S CREDITORS.

Where the wife of an insolvent debtor on her own credit extended to her by reason of her ownership of certain property, engaged in business in a small way, there was no fraudulent concealment of the husband's property from his creditors by the carrying on of the business in her name, and property accumulated in such business was not subject to the claims of the husband's creditors, though the husband assisted in the business by purchasing supplies and paying for them by checks on the wife's account and by other work and labor, and at times sought to create the impression that he was the owner of the business.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by Murle L. Rowe, as trustee of James L. Drohen, bankrupt, against James L. Drohen and wife. Bill dismissed.

Herman J. Westwood, of Fredonia, N. Y. (Nelson J. Palmer, of Dunkirk, N. Y., of counsel), for plaintiff.

Nugent & Hefferman, of Dunkirk, N. Y., for defendant Mabel R. Drohen.

Warner & Woodin, of Dunkirk, N. Y., for defendant James L. Drohen.

HAZEL, District Judge. The plaintiff, as trustee in bankruptcy, has brought suit against James L. Drohen and wife to recover property claimed to have been fraudulently transferred to her by her husband and held by her as trustee for him. The gravamen of the bill is to recover real estate and personal property in the possession of Mrs. Drohen, and to which she has title, on the ground that title and possession were acquired pursuant to a formulated plan or scheme to conceal the property of the husband, who at the time of its acquirement was hopelessly insolvent, with liens and judgments against him, and by such concealment of property to hinder and prevent creditors from satisfying their debts by levying thereon. A mass of testimony was taken on both sides, but it will not be necessary to review it, and a statement of the essential conclusions alone will be given.

The evidence is entirely insufficient to show the existence of any plan or scheme to place the property acquired by Mrs. Drohen, and specified in the bill, fraudulently beyond the reach of her husband's creditors. There was no agreement or understanding between the defendants that the money or property of the bankrupt should be used to purchase the business in which the wife engaged, and no equitable trust for her husband was created by engaging in such business or by acquiring the said properties.

Concededly the bankrupt was insolvent in 1906, prior to the time when his wife engaged first in the notion and later in the moving picture business, and subsequent to the recovery of a judgment against him which established his insolvency. The claim of the plaintiff is that at such time the scheme in question eventuated to have the legal title to all money and property of the insolvent placed in his wife's name to prevent creditors from taking it; that as part of such scheme the husband closed his account at the Merchants' National Bank of Dunkirk in 1906, and later on in the month of December caused a reopening thereof in the name of Mrs. J. L. Drohen, since then depositing in her name and making withdrawals by signing her name to checks. But, as he was authorized by Mrs. Drohen to deposit funds and make withdrawals, no undue importance can be given thereto. It appears that the account at the bank was opened in the name of Mrs. J. L. Drohen, owing to the discount of her promissory note by the Merchants' National Bank, a note, or notes, also signed by her husband and by her mother; but, regardless thereof, the credit, as testified by the cashier of the bank, was given exclusively to Mrs. Drohen, because of her ownership of certain real estate and subsequent acquirements made possible by advances to her by her friend,

Mrs. Tuthill. It is undoubted that, when the business was started, she owned and possessed both property and credit, while her husband neither owned nor possessed any.

Mrs. Drohen did not become the agent for her husband in the conduct of the business, but, on the contrary, was the definite owner and principal thereof, with corresponding responsibilities. Although the husband rendered some assistance in the way of purchasing supplies and paying for them by checks on her account, and by performing other work or labor, the businesses and increment thereof clearly belonged to the wife, and were not acquired pursuant to any scheme of concealment, nor did she loan her money to her husband as the foundation for the enterprise. She did not at any time cheat or intend to cheat his creditors, but by venturing in business in a small way she employed her separate property and credit. Hence the creditors of her husband cannot be allowed, because of her success in her various ventures, to satisfy their debts out of her individual property and credit or the increments thereof. Under the laws of this state her separate property and credit could, with her consent, be managed by her husband, and, of course, deposits could be made by him in her name, and checks drawn on her account, and supplies purchased by him for her, without subjecting the said property or funds to the claims of his creditors. Indeed, even assuming that the businesses became profitable wholly by reason of his management and foresight, his creditors could not benefit thereby. Aldridge et al. v. Muirhead, 101 U. S. 397, 25 L. Ed. 1013. As said by Thomas, J., in Silberberg v. Wember, 173 App. Div. 717, 159 N. Y. Supp. 843:

"It is a common and legal practice that one unable by his pecuniary condition to do business should, as the agent of his wife or some other, do the work of operation. The vice of the thing is when the husband's property is covered up by such a scheme. Here the men had nothing, and, if the wives had not bought, there would have been no sale—no business. The men's future services did not belong to their creditors, and they could place them at the disposition of their wives."

This statement is believed to apply to the facts under consideration. If, however, Mrs. Drohen had had no separate estate, or if the credit necessary to embark in business had been given to her husband, instead of to her, the proposition would be different. The question of a smaller contribution of property and credit by the wife than by the husband is not presented, for the evidence shows clearly enough, not only that she was the bona fide owner of the property on the strength of which limited credit at the bank was obtained by discounting a promissory note amounting to $300, but also that it was owing to her perspicacity that the enterprises at Dunkirk and Silver Creek were initiated.

It is true that the case is not devoid of suspicious circumstances tending to indicate that the bankrupt at various times desired to create the impression that he was the owner of the businesses and rented the Jamestown theater property, representing that he owned the Dunkirk enterprise; but such assertions and false representations do not negative the wife's ownership or lack of intention to cover up the husband's property.

Importance is attached to the purchase of a piano and automobile, separate from the acquirement of the theaters and other specified properties in relation to which there was evidence; but as both the piano and automobile were unquestionably paid for out of funds derived from the moving picture businesses owned and conducted by Mrs. Drohen, and as it appears that such purchases were made on her account, the representations by her husband of ownership are not controlling.

My conclusion is that fraud has not been proven, and that the allegations of the bill are not substantiated.

Dismissed, with costs.